# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GRETCHEN EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 05-1285-CV-W-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## O R D E R

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

---

[1] The name of Michael J. Astrue, Commissioner of Social Security, has been substituted for that of Joanne B. Barnhart, the former Commissioner.

1

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814

(8th Cir. 1994).

## Discussion

Plaintiff was 45 years old at the time of the hearing before the ALJ. She has a high school education. Her past relevant work includes working as a cashier at Wal-Mart.

At the hearing before the ALJ, plaintiff testified that she suffers from pain in her legs, arms, hands, and hips. She takes prescribed pain medication, including Percocet and Oxycontin. She does not drive when she is taking pain medication, because it makes her groggy and tired, and until the medication starts taking effect, she feels wobbly and nervous. She was diagnosed with Charcot-Marie-Tooth Syndrome in the past two to three years. This causes her pain and trouble walking. Plaintiff testified that after taking three pain pills the day of the hearing, her pain was at a four on a one-to-ten scale, and this is where it would usually be. Without pain medicine, it would be at a ten, and without medication, the pain would awaken her at night. She described the pain as throbbing and tingling, with sharp pains that cause her to cry out at times. She stated that she could no longer perform her job at Wal-Mart because she cannot stand for longer than an hour. She also stated that even if she had a job with a sit/stand option, her pain is so bad at times that it causes her to cry, and she does not want to be out in public. It was her testimony that her condition has not improved.

The ALJ found that plaintiff has not engaged in substantial gainful activity subsequent to the alleged onset date of disability, April 30, 2002. He found that the medical evidence establishes that plaintiff suffers from "Charcot-Marie-Tooth Syndrome, peripheral neuropathy, mild bilateral carpal tunnel syndrome, deQuervain's syndrome, a history of multiple surgical procedures of the bilateral feet, osteoporosis and osteopenia, mild degenerative changes of the

3

cervical spine, delayed esophageal motility and history of gastric reflux, a small sliding hiatal hernia, mild emphysema and associated longstanding tobacco use, an affective disorder, and an anxiety-related disorder."   [Tr. 20].   It was the ALJ's finding that plaintiff was only partially credible. It was his further finding that plaintiff is unable to perform her past relevant work, but that she retains the RFC to perform a significant range of sedentary work.   Accordingly, it was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Specifically regarding the RFC, the ALJ found that plaintiff can lift, carry, push or pull up to 10 pounds maximum occasionally, and 2-3 pounds frequently; can sit at least 6 hours total and stand and/or walk up to two hours total of an eight-hour workday; must have a sit/stand option; cannot perform job tasks that require constant movement of the bilateral upper extremities, but can perform frequent repetitive gross and fine motor movements with the bilateral extremities; should avoid frequent or prolonged exposure to concentrations of temperature extremes, humidity or wetness, vibration, unprotected heights, or hazardous moving machinery; cannot perform job tasks requiring frequent or prolonged attention and concentration to detailed, complex instructions, but otherwise has no significant limitation of ability to understand, carry out, and remember simple instructions, to use simple judgment, to respond appropriately to supervision, coworkers, and usual work situations; and can deal with changes in a routine work setting.

Plaintiff contends that the ALJ's decision should be reversed because he erred in not properly weighing her credibility and fairly evaluating her pain complaints; and erred in not giving sufficient weight to the treating physicians, Dr. Barohn, Dr. Saperstein, and Dr. Boulware.

The law is clear that "[a] treating physician's opinion is generally entitled to substantial

4

weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). A treating physician's opinion is not automatically controlling, but rather, must be consistent with the record as a whole. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). According to agency regulations, a treating physician's opinion should be given controlling weight if it meets the following conditions: it must be from a treating physician; it must be a medical opinion; the opinion must be well-supported; and it must not be inconsistent with other evidence in the record. SSR 96-29; 20 C.F.R. § 404.1527.

The ALJ discounted the opinion of Dr. Barohn, plaintiff's treating physician, who opined that plaintiff was disabled and unable to work because he concluded that this opinion was inconsistent with mild findings described in his examination notes or his diagnosis of "mild" neuropathy. It was also the ALJ's conclusion that Dr. Saperstein's opinion was not a medical opinion regarding plaintiff's ability to work, but rather, referred to the "disabled" designation provided by Dr. Barohn. Regarding Dr. Boulware, the ALJ discounted his opinion that plaintiff was unable to perform any kind of work because his diagnoses were inconsistent with test results and other evidence in the record, as well as inconsistent with plaintiff's own testimony. Rather than rely on any of these opinions, the ALJ gave significant weight to the opinion of Dr. Majure-Lees, who examined plaintiff and reviewed her medical records. He also relied on Dr. Parsons, a state agency consultant, whose opinion was consistent with Dr. Majure-Lees' findings. He stated that she was not able to perform her past work, but based on her age and education, could perform other work. The ALJ also gave significant weight to the opinion of Dr. Breckenridge regarding plaintiff's mental status, which the ALJ noted was consistent with neurological

5

examinations that reflected that her mental status was normal.

Having fully reviewed the record, the Court finds that it was error not to afford greater weight to the opinion of plaintiff's treating physicians. In reviewing plaintiff's medical record as a whole, the Court finds that there is not substantial evidence in the record to support the ALJ's decision to discount the opinions of treating physicians, several of whom were specialists in the field, who had examined plaintiff, reviewed objective test results, reviewed her medical history, and reviewed the findings of other physicians. A thorough review of the record indicates that plaintiff has received extensive treatment by specialists for her neurological problems, specifically, as well as other medical conditions. Based on the "severity of her symptoms" of peripheral neuropathy, including intermittent numbness, burning, and tingling in all four of her extremities, Dr. Lopez referred her to Dr. Barohn. [Tr. 471, 474]. The degree of limitations suggested by Dr. Barohn was a medical opinion based on his role as a treating physician, and his medical opinions were well-documented in the record. Dr. Barohn, after a full examination of plaintiff, opined that she "has significant pain from the neuropathy, and therefore I believe that she is completely disabled and is unable to work. The patient is applying for Social Security disability and, in my opinion, it is medically indicated." [Tr. 428]. According to Dr. Boldry, DPM, who treated plaintiff for problems with her feet, he stated that her "medical history is significant for osteoporosis and multiple metatarsal fractures caused by this problem." [Tr. 424]. Dr. Boldry stated that plaintiff had "been through multiple surgeries on both feet for multiple pedal problems and has also had several stress fractures, particularly in her left, which has decreased her ability to stand on a full-time basis." [Id.]. He acknowledged that she was currently seeking a disability because of her inability to hold a full-time job in a weight-bearing

6

position, and rendered the opinion that there was nothing more in the way of treatment that could be offered to her from a medical standpoint. According to Dr. Boulware, who stated that he was a treating physician for plaintiff, she "suffers from painful axonal sensory and motor peripheral neuropathy." [Tr. 425]. He found that "she has osteoarthritis affecting her hands and knees, soft tissue muscular pain, and mild COPD," and "progressive osteoporosis." [Id.]. He noted that she had been unable to work for approximately 15 months "secondary to disabling pain with prolonged sitting or standing." [Id.]. It was his opinion that "[h]er symptoms have improved but they remain persistent and progressive and it is my opinion that she is unable to function in any capacity with regards to full or part-time employment." [Id.]. That opinion was provided on July 11, 2003. On February 22, 2004, Dr. Boulware stated again that it was his opinion, "secondary to pain as well as her other medical problems, that she is completely disabled and unable to perform work of any kind." [Tr. 468]. According to Dr. Saperstein, in noting that his colleague, Dr. Barohn, had previously written a letter stating that plaintiff was disabled, her pain had increased since that time, which necessitated increased amounts of pain medication.

It is apparent that plaintiff suffers from a variety of medical problems, which have caused her to undergo different treatment modalities, including surgeries and narcotic pain medications. These conditions have been substantiated by objective medical tests, and have caused severe pain. The record indicates that she suffers from Charcot-Marie-Tooth Syndrome, which involves a congenital or familial degenerative neurological disorder involving a high arch in the foot and causes peripheral neuropathy symptoms. She has had surgical procedures on her feet for removal of bunions and internal fixation of her toes; she has been diagnosed with osteoporosis and osteopenia; she has complained of an unsteady gait, falling easily, intermittent

7

tingling in her feet and pain. Her complaints of pain, burning, and tingling in her bilateral extremities are consistent with the syndrome, according to an agency expert, Dr. Alex.

The Court finds that this is a classic case where the opinions of treating physicians, which are consistent with each other and the record as whole, should have been afforded significant weight. It is clear that based on a thorough review of the record as a whole, there was not substantial evidence to support the decision of the ALJ, and that the opinions of the treating physicians should have been afforded controlling weight.

Additionally, the Court similarly finds that there is not substantial evidence to support the ALJ's decision regarding plaintiff's credibility. In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). It is apparent that plaintiff has sought and received a wide range of treatment on an on-going basis for a host of medical conditions. She takes a wide variety of prescription medication for these conditions, including strong narcotic pain medication. Even with pain medication, she still suffers pain, which is well-documented in the record by more than one treating physician. Plaintiff's work history should also have been afforded more weight. The Court find that it was error for the ALJ to have found plaintiff only partially credible.

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England<br>
 JAMES C. ENGLAND, CHIEF<br>
United States Magistrate Judge

Date:    3/6/07